

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOEL ARGENTO,

        Petitioner,

v.

J.E. THOMAS, Warden,
FCI Sheridan,

        Respondent.

Civil No. 10-599-AC

OPINION AND ORDER

ALISON M. CLARK
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

        Attorney for Petitioner

DWIGHT C. HOLTON
United States Attorney
RONALD K. SILVER
Assistant United States Attorney
1000 SW Third Ave, Suite 600
Portland, OR 97204

        Attorneys for Respondent

1 - OPINION AND ORDER -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at FCI Sheridan, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a magistrate pursuant to 28 U.S.C. § 636. For the reasons that follow, the Petition for Writ of Habeas Corpus is DENIED.

## BACKGROUND

Petitioner is currently serving a 210 month term of imprisonment on a conviction from the Central District of California for Possession with Intent to Distribute Methamphetamine and Felon in Possession of a Firearm. His current projected release date is October 24, 2010.

Petitioner was committed to the custody of the Bureau of Prisons ("BOP") on July 10, 1995. On June 25, 2008, BOP officials determined Petitioner to be eligible for early release under 18 U.S.C. § 3521(e). On December 3, 2008, Petitioner entered the Residential Drug Abuse Treatment Program ("RDAP"). On September 3, 2009, Petitioner completed the residential portion of RDAP. On September 8, 2009, Petitioner was transferred to a Residential Reentry Center ("RRC"), or "halfway house," to begin the community component of RDAP.

While Petitioner was at the RRC, he was subject to random drug testing. On December 2, 2009, Petitioner gave a urine sample for testing at the RRC. On December 9, 2009, RRC staff received the test results, which revealed a positive finding for opiates, specifically Hydrocodone; for Benzodiazepines, specifically Nordiazepam/Oxazepam and Temazepam; and for amphetamines.

On December 9, 2009, and on December 14, 2009, Petitioner gave additional urine samples. On December 15, 2009, RRC staff received the results for the December 9, sample. The results

again revealed a positive finding for opiates, specifically Hydrocodone; for Benzodiazepines, specifically Nordiazepam/Oxazepam and Temazepam; and for amphetamines.

On December 18, 2009, as a result of the first two positive drug results, BOP officials transferred Petitioner to a contract jail facility and terminated his early release eligibility status.

On December 22, 2009, RRC staff received the test results from the December 14, 2009, sample. Again the results showed positive findings for Benzodiazepines, specifically Nordiazepam/Oxazepam and Temazepam; and for amphetamines, including methamphetamine. RRC staff prepared an incident report based on the results from the December 14, 2009, sample charging Petitioner with violation of code 112, Use of Any Narcotic.

On January 7, 2010, RRC staff went to the contract jail facility and gave Petitioner a copy of the incident report. Upon receipt of the report, Petitioner stated "It shows that I have Diazepam, 10 mg [a form of Benzodiazepine], on the med sheet, but I don't know how the methamphetamine got there."

Petitioner waived his right to 24 hours notice, and the Center Discipline Committee ("CDC") proceeded with his disciplinary hearing that same day. Petitioner also waived his right to staff representation and his right to call witnesses. At the CDC hearing, Petitioner denied using methamphetamine. The next day, on January 8, 2010, the CDC contacted staff at the laboratory where the urine samples were analyzed, who stated that Petitioner's medication could not have caused a false positive for methamphetamine.

The CDC concluded Petitioner committed the prohibited act as charged, and recommended that the Disciplinary Hearing Officer ("DHO") sanction Petitioner with a loss of the maximum

3 - OPINION AND ORDER -

amount of Good Conduct Time allowed, as well as a disciplinary transfer. On January 21, 2010, DHO McWilliams reviewed and certified Petitioner's CDC report. The DHO found the CDC had complied with the requirements of due process. He then imposed the sanction of 40 days of lost Good Conduct Time and recommended a disciplinary transfer. In support of the decision, the DHO stated:

> On December 14, 2009 at 1706 hours [Petitioner] provided a urinalysis for drug testing purposes. On December 22, 2009 at 0723 hours a fax was received from Redwood Toxicology Laboratory. The fax included a positive for methamphetamine at a level of 1.9 mcg/ml. A check with the Redwood Toxicology Laboratory on January 8, 2010 confirmed that none of the medication [Petitioner] takes would come back positive for methamphetamine.
>
> During the hearing, [Petitioner] could not give any reason why [his] test came back positive for methamphetamine. Therefore, based on all of the evidence received the CDC issues a finding of guilt.

BOP staff acknowledge they have been unable to locate any documentation demonstrating that Petitioner was provided a copy of the CDC report at the time of the DHO's decision. Therefore, and because Petitioner alleges he did not receive a copy of the CDC report, a copy of the report was given to Petitioner on July 14, 2010, along with notice that he had 20 days thereafter to file an appeal to the regional director. Neither party provides information as to whether Petitioner filed an appeal.

On May 25, 2010, Petitioner filed his Petition for Writ of Habeas Corpus in this Court. In it, Petitioner alleges his due process rights were violated because:

> As of this writing I have <u>never</u> received an <u>incident report</u> or been to a <u>DHO hearing</u>, all in violation of my due process rights under <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556-57 (1974), which is afforded as follows:
> 1) Notice of the charges
> 2) The right to call witness [sic]

4 -- OPINION AND ORDER -

> 3) The right to a written explanation of the evidence relied on and reasons for the conclusion.

By way of remedy, Petitioner seeks immediate release based on the restoration of the lost good time credit and the lost early release.

In his Brief in Support of Petition, Petitioner concedes that this Court cannot reach the question of whether he was properly terminated from the halfway house and his early release thereby forfeited.[1] Petitioner argues, however, that his good conduct time should be restored because he was prejudiced by the BOP's admitted failure to provide notice of the DHO decision. Although not alleged as a claim in his Petition, he also argues the DHO did not based the sanction on "some evidence" because the record fails to establish that the BOP maintained a proper chain of custody of the urine sample.

As noted, Respondent acknowledges they cannot establish that Petitioner was provided a copy of the CDC report at the time of the DHO's decision. Respondent argues, nevertheless, that the Petition should be dismissed because Petitioner has not exhausted his administrative remedies, and that the matter should be "remanded" to the BOP to allow Petitioner to administratively appeal the sanctions.

## **LEGAL STANDARDS**

Petitioner brings this action pursuant to 28 U.S.C. § 2241. To obtain relief under § 2241, Petitioner must establish that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(b)(3).

---

[1] Petitioner's concession obviates the need for the Court to address Respondent's argument that this Court lacks jurisdiction over Petitioner's removal from the RDAP program.

5 - OPINION AND ORDER -

## DISCUSSION

### I. Exhaustion of Remedies

It is well settled that federal prisoners generally must exhaust their federal administrative remedies prior to filing a habeas corpus petition under 28 U.S.C. § 2241. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). Although the exhaustion requirement is not jurisdictional, its importance is well established. Exhaustion of administrative remedies aids judicial review by allowing the appropriate development of a factual record in an expert form; conserves the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allows the administrative agency an opportunity to correct its own errors. *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983).

This court may dismiss a habeas petition for failure to exhaust administrative remedies. *Martinez*, 804 F.2d at 571; *Fendler v. U.S. Parole Com'n.*, 774 F.2d 975, 979 (9th Cir. 1985). Exhaustion may be excused if the administrative remedies are inadequate, futile, or where pursuit of the administrative remedies would cause irreparable injury. *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004); *United Farm Workers of America, AFL-CIO v. Arizona Agr. Employ. Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982).

The BOP has established an administrative remedy program which requires an inmate to proceed through a four-level review process: (1) an attempt at informal resolution with institutional staff (BP-8); (2) a formal written administrative remedy request to the Warden (BP-9); (3) an appeal to the BOP Regional Director (BP-10); and (4) an appeal to BOP General Counsel (BP-11). 28

6 - OPINION AND ORDER -

C.F.R. §§ 542.13-542.15. An appeal to the General Counsel is the final administrative remedy. 28 C.F.R. § 542.15(a).

It is undisputed that Petitioner had not exhausted his available administrative remedies at the time he filed his Petition in this Court on May 25, 2010. In his Petition, however, Petitioner does state he filed his BP-9 on May 23, 2010. Neither party indicates in their briefing the status or outcome of that administrative remedy request.

Further, as noted, the BOP provided Petitioner a copy of the CDC report on July 20, 2010, along with notice that he had 20 days to file an appeal. Again, neither party indicates whether he pursued that appeal.

Petitioner argues exhaustion of administrative remedies would cause irreparable injury in light of his contention that he is entitled to immediate release from confinement. While the Court has some concern that Petitioner did not diligently pursue his administrative remedies, it is obvious that requiring exhaustion at this juncture would be futile. Accordingly, exhaustion is excused in the circumstances of this case.

## II.  Procedural Due Process - Written Notice of Decision

It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four advance written notice of the disciplinary charges; (3) an

7 - OPINION AND ORDER -

opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Id.* at 563-67.

Here, it is the fifth requirement, of a written statement, that is at issue. The purpose behind requiring a written statement of the fact-finder as to the evidence relied on and the reason for the disciplinary action taken is so an inmate may pursue his or her right to appeal first through the Bureau of Prisons' administrative remedy procedures, and then via the federal court in habeas review. *Queen v. Cross*, 2010 WL 2196558, *2 (N.D. W. Va. May 26, 2010).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et. seq.* These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *Van Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

Pursuant to 28 C.F.R. § 541.17(g), following a decision in a disciplinary proceeding, "[t]he DHO shall give the inmate a written copy of the decisions and disposition, *ordinarily* within 10 days of the DHO's decision." (Emphasis added.) There is not, however, any due process requirement that the written statement be provided to an inmate within a particular time. *Ageloff v. Reese*, No. 07-124-DCB, 2009 WL 2591622, at *5 (S.D. Miss. Aug. 13, 2009) (citing *Wolff*, 418 U.S. at 564-70).

A DHO's "failure to give an inmate a written copy of its decision within ten days should not entitle an inmate to habeas relief so long as the delay had no prejudicial effect on an administrative appeal." *Staples v. Chester*, 370 Fed. Appx. 925, 930 (10th Cir. Kan. 2010) (citing

8 - OPINION AND ORDER -

*Cook v. Warden, Fort Dix Corr. Inst.*, 241 Fed. Appx. 828, 829 (3rd Cir. N.J. 2007), *pet'n for cert. filed*, (No. 10-5387, July 7, 2010); *see also Silcox v. Scism*, 2010 WL 2175845 (M.D. Pa. May 28, 2010) ("the true measure of whether a due process violation occurred as a result of a delay in [the petitioner's] disciplinary process is whether he suffered harm or some form of prejudice as a result").

Petitioner argues he was prevented from appealing the disciplinary findings because the DHO failed to provide the written decision and, as such, has established prejudice. In fact, however, Petitioner himself alleges he filed an administrative appeal two days before he filed the instant action. Moreover, when BOP officials did finally provide Petitioner a copy of the written provision, it was done with the express representation to Petitioner that he had twenty days *thereafter* to file his administrative appeal. As noted above, the record contains no information as to the disposition of the administrative appeal filed in May 2010 or whether Petitioner took advantage of the opportunity to file an administrative appeal in July 2010. As such, while the delay in providing the written statement is certainly unfortunate, Petitioner has not established that it rises to the level of a procedural due process violation.

## III.  Substantive Due Process - Sufficiency of Evidence

The only remaining issue is whether there was sufficient evidence to support the decision by the DHO to revoke Petitioner's good time credits.[2] Petitioner argues the DHO's findings are inconsistent with BOP rules because the DHO's report does not specifically verify that BOP

---

[2]As noted above, Petitioner did not allege a substantive due process claim in his Petition. Nor has Petitioner filed an amended petition asserting such a claim. Given the time-sensitive nature of this case, however, the Court deems the Petition constructively amended by inclusion of the substantive due process in Petitioner's Brief.

9 - OPINION AND ORDER -

officials complied with their own rules regarding the collection of urine and the chain of custody of urine samples. As such, he contends the imposition of disciplinary sanctions violated his substantive due process rights.

Substantive due process is satisfied in a prison disciplinary procedure if there is "some evidence" to show the inmate committed the offense in question. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence." *Id.* at 455-56. Rather, "the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Id.* (Emphasis added.)

In Program Statement 6060.80, the BOP promulgated requirements for how urinalysis evidence is collected and tested, including specifications to ensure BOP staff members maintain a chain of custody. Staff members taking a urine sample as well as the inmate providing the sample must sign a laboratory form that the specimen was provided by the inmate, sealed in the inmate's presence, and the identification number on the bottle corresponds to the number assigned to the inmate on the laboratory form.

Here, Petitioner argues the DHO failed to specifically verify in his written findings that the chain of custody and laboratory forms match Petitioner. Moreover, Petitioner notes, the BOP has not produced a laboratory form that matches Petitioner as the same person who provided the sample that tested positive for drugs. Instead, the DHO relied on a "urine specimen log" that was used for several inmates and the toxicology report indicating that Petitioner tested positive for methamphetamine.

Petitioner's argument is without merit. The urine specimen log attached to the incident report upon which the disciplinary proceeding was based identifies a specimen number assigned to Petitioner's urine sample. The toxicology report refers to the same specimen number. Moreover, the incident report itself refers to the chain of custody of the urine sample.

In his written findings, the DHO stated his decision was "based on all of the evidence received," which included the incident report, the specimen log, and the toxicology report. The fact that the DHO did not specifically refer to the chain of custody in his written findings does not negate the validity of his conclusion that the evidence supported a finding of guilt.[3]

Petitioner cites *Willmes v. Thomas*, No. 08-1439-ST, 2009 WL 2424642 (D. Or. Aug., 5, 2009) in support of his argument that errors in the handling of drug screening specimens may cause due process problems. In *Willmes*, however, the inmate presented direct evidence that the chain of custody had, in fact, been broken, along with other "overwhelming evidence of innocence." Id. at *7. Such is not the case here.

Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the disciplinary proceeding and meets the requirements imposed by the Due Process Clause. Accordingly, the Petition for Writ of Habeas Corpus is denied.

---

[3]Even if the DHO's report somehow failed to comply to the letter with the requirements of the BOP Program Statement, that failure itself would not rise to a due process violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met.")

11 - OPINION AND ORDER -

## CONCLUSION

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus and DISMISSES this action.

IT IS SO ORDERED.

DATED this 16th day of September, 2010.

John V. Acosta
United States Magistrate Judge